## WINANS and HARROWER *vs.* PEEBLES and BURDICK.

Since the acts of 1848 and 1849 " for the more effectual protection of married women," a married woman can execute a valid conveyance of her real estate, to her husband, which will bind her heirs.

If such a conveyance is not valid at law, it is good, and may be sustained, in equity.

It is not essential to the validity of a deed, in law, that the consideration specified in it, or any portion of it, should be in fact paid. It is sufficient if it is stated in the deed to have been paid.

SEVERAL years prior to the passage of the "act for the more effectual protection of the property of married wo-

men," passed in 1848 (*Laws of* 1848, *ch.* 200) and amended in 1849, (*Laws of* 1849. *p.* 528,) Catharine M. Winans, being a widow and having two children by her former husband, married Corbet Peebles, one of the defendants in this action. On the 15th March, 1851, William Steele, the father of Mrs. Peebles, gave to her husband $825, with directions to purchase with it a lot of land of about 40 acres, and take a conveyance directly to her. It was claimed and found that this was done with the understanding on the part of Steele and Mrs. Peebles, that after the death of the former, the latter should convey to her husband. The land was purchased with the money furnished by Steele, and the conveyance made to Mrs. Peebles, with the consent and by the agency of her husband. On the 28th day of June afterwards, Mrs. Peebles by the usual common law conveyance, a warranty deed, conveyed the same premises to her husband, expressing a consideration of $825, which it appears was not in fact paid. Mrs. Peebles was then sick of a disease which terminated in her death on the 11th day of the following July. There were no issue of her marriage with the defendant Peebles. She left surviving her, her son John C. Winans and her grandson William B. Harrower, the son of her deceased daughter by marriage with Levi B. Harrower, also deceased, and which son and grandson were her only heirs at law. It did not appear either by the deed to Mrs. Peebles, or the deed by her to her husband, that she was a married woman. This action was brought by these heirs to set aside that conveyance as void; the question being whether a married woman can execute a valid common law conveyance of her real estate to her husband, which shall bind her heirs.

The action was tried at a circuit held in Steuben county in July, 1859, before Justice JOHNSON, without a jury; who found the facts to be as above stated, substantially, and found the following conclusions of law: 1. That the said conveyance by Catharine M. Peebles to Corbet Peebles was a good and valid conveyance, and vested in him a perfect title at law,

Winans *v.* Peebles.

notwithstanding she was, at the time of such conveyance, the wife of the said Corbet Peebles. 2. That even if such conveyance was not a valid conveyance at law, the same was good and might be sustained in equity. To which decisions the plaintiffs' counsel excepted.

The following opinion was delivered by the judge, on deciding the case at special term:

JOHNSON, J. "The first question presented in this case is, whether the conveyance in question is valid under the act of 1849, amending the act 'for the more effectual protection of married women.' By this act 'any married female may take by inheritance or by gift, grant, devise or bequest from any person other than her husband, and hold to her sole and separate use, and convey and devise real and personal property and any interest or estate therein, and the rents, issues and profits thereof, in the same manner and with the like effect as if she were unmarried, and the same shall not be subject to the disposal of her husband nor be liable for his debts.' It will be seen that under this act the right of acquisition is limited, so that property can be taken by the wife from persons other than her husband only. But the right of alienation by her is general, without limit or qualification of any kind. She may convey and devise 'in the same manner and with the like effect as if she were unmarried.' Had she been unmarried at the time of the grant, it is admitted she might have conveyed to the defendant, and the conveyance would have been effectual to vest in him the title. It is also conceded that, being a married woman at the time, had the defendant been some person other than her husband, the conveyance would have been valid. Now as the statute authorizes a married woman to hold and convey, as if she were unmarried, and gives the same effect to her deed, it is difficult to see why the deed in question is not necessarily valid, notwithstanding the defendant's relation of husband to the grantor. It must be admitted that the language of the act is broad and comprehensive

enough to authorize and give effect to such a conveyance. It invests the wife with all the rights and powers of disposition incident to ownership and possession. It seems to remove from her, in reference to such property, not partially but entirely, all the disabilities and restraints of coverture, and to place her, in respect to alienation, upon the same footing, precisely, as though she had never contracted the marriage relation.

It is claimed, however, that although such a conveyance may come within the letter of the statute, it is not within its spirit and intent. And it was held by the late Justice Barculo, at special term, in the case of *Graham* v. *Van Wyck*, (14 *Barb*. 531,) that notwithstanding the general and unqualified terms by which the power is given in the statute, it was only intended to confer upon married women the right to convey to persons other than their husbands. This decision being at special term is not binding as authority, and with all proper respect for the opinions of the eminent judge, after a full and careful examination of the whole subject of the rights of married women, in reference to their separate property, at the time of the passage of the acts of 1848 and 1849, and contrary to my first impressions, I have come to the deliberate conclusion that the legislature designed to give the powers as fully and unqualifiedly, in the enactment, as its terms import, and that no such exception as that contended for is implied in any of its provisions, or was intended by its framers. I shall assign some of the principal reasons which have led me to this conclusion.

1. The act proceeds upon the assumption that a female is entirely competent, in respect to qualification, to manage, control and dispose of her property after marriage as well as before, without any aid, advice or assistance from her husband. And its provisions have special reference to the right of acquisition, enjoyment and disposition of property by her, as her separate property, independent of her husband. The right, as we have seen, to take from others, expressly excepts

the husband. The right to enjoy is secured to her, to the entire exclusion of her husband. It is neither subject to his disposal nor liable for his debts. But the right to convey or devise is without exception. Now had the legislature intended to limit the right of conveyance by her, to persons from whom she was authorized to take, we should have the right to expect that such limitation would be expressed, especially in view of the careful limitation upon the right to take. The unavoidable inference is that the legislature intended in effect, as well as in words, to confer an unlimited right of alienation.

2. There was no reason for any such restriction. The voluntary conveyance by a wife, to her husband, of her separate property, was not one of the mischiefs which the statute was intended to remedy. The mischief to be remedied was the husband's power over his wife's estate, to dissipate and squander it, and subject it to the payment of his debts. It was the right which the law gave the husband to his wife's property, and not the right she saw fit to give him voluntarily, which the statute aimed to abolish. It took from him all right of disposal, and conferred the unrestricted right upon her. The policy obviously was to allow the wife to do what she would with her own, the same precisely as any other individual, and to secure to her all the incidents pertaining to the ownership of property by others. Hence the provisions of the second section of the act of 1849, authorizing a trustee holding property for a married woman to convey it to her upon her written request, and upon a certificate of a justice of the supreme court, that he had examined the condition of the property, and made due inquiry into the capacity of such married woman to manage and control the same. It was the obvious design to do away, as far as practicable, with all the useless and cumbersome machinery of uses and trusts, in the possession, enjoyment and disposition of property by a married woman.

3. It was clearly no part of the scheme, or policy, of the act to abridge or take away any of the rights which the wife

had previously enjoyed, in respect to the use or disposition of her separate estate. It aims to enlarge her rights, not to curtail them. The construction contended for would, I apprehend, take away a right which a wife has always enjoyed, in this state at least, of bestowing her separate estate upon her husband. True she could not, before this statute, convey it to him directly, because of her coverture, but she could convey it to a third person for the express purpose of having it conveyed to her husband by such third person. And in making such conveyance to such third person it was not necessary for her husband to join in the conveyance. This, though formerly doubted, is now settled. (*The Albany Fire Ins. Co.* v. *Bay,* 4 *Comst.* 9.) Such a conveyance has always been held good at law, and not to interfere with the technical common law rule, that a wife could not make a conveyance to her husband. (*Meriam* v. *Harsen,* 2 *Barb. Ch. Rep.* 232. *Jackson* v. *Stevens,* 16 *John.* 110.)

Our statutes, as the legislature well knew, have always authorized a married woman to convey her separate real estate by deed, by the observance of certain prescribed conditions. The legislature also knew that a married woman through the medium of a trustee of her own creation, could convey her real or personal estate to her husband, and it *is* certainly not unreasonable to suppose that they intended, when they said she might convey in the same manner and with the like effect as if she were an unmarried female, to enable her to do directly what she might do indirectly before. This is no novel power conferred by the legislature upon married women, and whoever regards it in any such light is liable to be widely and fatally misled. It only changes the form of executing the identical power over her separate estate which she possessed and could exercise before, both at law and in equity. Originally, at common law the wife could neither own nor enjoy property separately from her husband. Whatever belonged to her before coverture, or came to her afterwards, passed absolutely to the husband, or fell under his exclusive dominion. But as civilization

Winans *v.* Peebles.

and refinement advanced, and the true position of woman as a member of society came to be better understood and acknowledged, such a rule was found to be intolerable, and it has accordingly from time to time been modified by legislation, and the interposition of courts of equity, until the husband has been deprived of all right to the property of his wife, and all dominion over it, except by her free or voluntary consent or grant. No valid argument, as I conceive, can be drawn in favor of the implied limitation upon the right of conveyance contended for, from the exclusion of the husband from the list of persons from whom the wife may take property to be held by her as her separate property. If any argument is to be drawn from that exception, it seems to me it must be one favoring the opposite conclusion. The obvious purpose of that exception was to prevent a husband in that way putting his property out of his hands to the prejudice of his creditors. And the fact, as has been before suggested, that the wife is prohibited from taking from her husband while no restraint is placed upon her right and power of alienation, is a strong circumstance to show that no such restraint was intended. We are to assume that the legislature understood the existing rules of law and equity, and the necessary effect of the power to a married woman to convey and devise as if she were unmarried.

4. There is no rule for construing statutes, that I am aware of, which would authorize the courts to place such a restriction upon the wife's right of disposition. When the statute gives her authority to convey and devise her separate estate in the same manner and with *the like effect* as if she were unmarried, without any qualification, courts are bound to give to any conveyance made by her in due form the same effect they would give were she unmarried. If courts may say that certain conveyances made by her, of her separate estate, are ineffectual and void by reason of her coverture alone, they simply repeal the statute. To say that the legislature did not intend what they have expressed in the clearest and most un-

equivocal terms, is to set aside or evade their authority. The language is so clear and explicit that there is no room for interpretation or construction, and unless we have the right to infer that the legislature did not intend to make the power so extensive, because we may happen to think it would have been unwise in them to do so, notwithstanding their plain and direct expression to the contrary, the question of intent has no place in the discussion.

5. That the legislature intended to make a complete and radical change in the law, in respect to the rights of enjoyment and disposition by a married woman of her separate property, is not, and cannot be successfully questioned. And it seems to me very plain that the inevitable effect of giving a married woman power to convey and devise her separate property in the same manner, and with the like effect as if she were unmarried, is to enable her to convey directly to her husband, as effectually as though he were not her husband. No one will pretend that she could do so at common law. But the only reason was that the common law regarded husband and wife as but one person. It was the unity, both of person and interest, which prevented their contracting with, or conveying directly to each other. And although in the progress of things the wife was first by the process of fine and recovery enabled to alienate her separate estate at law, and subsequently by statute, it was still as a married woman that she made the disposition, the law still treating her to a certain extent as covert, and a unit with her husband. But this statute separates the wife entirely from the husband, and completely dissolves the theoretical unity to all intents and purposes as respects the possession, enjoyment and disposition of her separate estate. Since this statute the wife, in respect to her separate estate, stands at law precisely as she stood before in equity, a distinct and separate individual, capable not only of owning property in her own right, but of exercising and enjoying all the incidents of ownership, free use and disposition.

Equity, whose function, as an able writer has graphically

said, is ' to make the law work justice' without any aid from legislation, first devised a scheme by which married women were enabled to hold separate property and thus to protect themselves from the consequences of the improvidence, misfortunes or misconduct of their husbands. This was by the introduction of the doctrine of separate use and the power of disposition by appointment. This power might be vested in the female by the grantor of the estate, or it might be reserved by her, by agreement before marriage with her husband. In respect to such property held to the separate use of the wife, she was always regarded as a *feme sole*, and where she had the power of disposition, she could in equity dispose of it to her husband as well as to any other person, they being regarded in equity as they are in fact, two distinct persons; and this she could do directly and without the intervention of trustees. (*Story's Eq.* § 1395. *Bradish* v. *Gibbs*, 3 *John. Ch. R.* 523. *Methodist Epis. Church* v. *Jaques, Id.* 78 ; *S. C.* 17 *John.* 78. *Wallingford* v. *Allen*, 10 *Peters*, 583.) The only difference a court of equity made between a disposition by the wife to a stranger, or to her husband, was that the court would scrutinize the latter more closely to see that no undue influence had been exercised by the husband. And they always exercised the like care and caution when she conveyed to the husband through the medium of a third person. The reason why she was allowed in equity to make a disposition of her property to her husband was, that in respect to such property she should be regarded as a *feme sole* notwithstanding her coverture. The same consequences must, I think, flow from the statute which gives a married woman power to convey her separate estate, and the same effect to her conveyance as though she were a *feme sole*. And I can have no doubt that the legislature intended to place the legal rights of a married woman upon the same footing, in this respect, with her then existing rights in equity. No power of disposition can now be necessary, other than what the statute confers. The statute is the general power, and renders all special powers unnecessary.

My conclusion, therefore, is that the conveyance in question is a valid conveyance, and vested in the defendant a perfect title at law. It is not essential to the validity of a deed, in law, that the consideration specified in it, or any portion of it, should be in fact paid. It is sufficient if it is stated in the deed to have been paid. (*Meriam* v. *Harsen*, 2 *Barb. Ch.* 232.)

If, however, I am mistaken in this conclusion, I am clearly of the opinion that the deed may be sustained in equity. The plaintiffs come into equity to have the deed set aside, and must show that the conveyance is not only void in law, but that in equity it ought not to be upheld. Equity has always upheld conveyances which were void at common law, where equity and justice demanded it. And this, whether the estate conveyed were a legal or an equitable estate. There are no facts established by the evidence in this case, which would justify a court of equity in setting aside this deed as unjust or inequitable. On the contrary, the evidence shows quite satisfactorily, that the conveyance was the voluntary act of the wife, and that she made it in pursuance of a request from her father, from whom she received the money with which the land was purchased, and her promise to him that she would convey it to her husband after his, her father's, decease. The tendency of all the evidence in the case is to disprove any undue influence on the part of the husband. I shall not, however, enlarge upon this branch of the case, but content myself with merely stating my conclusions.

I have not failed to study with care and interest the very learned, ample and thorough brief and points presented by the plaintiff's counsel. But the view I have taken of the case has rendered it unnecessary to examine the numerous and ingenious positions there taken, in detail, or to comment upon the numerous authorities cited in their support. The case is new, and one of great interest, in view of the principle involved, and it is to be hoped may result in settling the law applicable to such cases, after a careful review of my judgment and opinion in the premises.

The defendants must therefore have judgment in the action, for their costs."

Judgment was rendered accordingly, and the plaintiffs appealed.

*Geo. T. Spencer,* for the appellants.

*J. Herron,* for the respondents.

The decision made at special term was affirmed at a general term held at Auburn, June 5, 1860, and the foregoing opinion adopted, as the opinion of the court. Present, *Smith, Knox* and *Johnson,* Justices.